UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JULIE S.[1],                          )
                                      )
                    Plaintiff,        )
                                      )
            v.                        )          No. 1:21-cv-02029-DLP-JMS
                                      )
KILOLO KIJAKAZI,                      )
                                      )
                    Defendant.        )

## ORDER

Plaintiff Julie S. requests judicial review of the denial by the Commissioner

of the Social Security Administration ("Commissioner") of her application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

*See* 42 U.S.C. §§ 405(g), 1381 *et seq.*  For the reasons set forth below, the Court

hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further proceedings.

## I.   PROCEDURAL HISTORY

On June 21, 2019, Julie filed an application for SSI.  (Dkt. 12-3 at 2, R. 76).

Julie alleged disability resulting from arthritis in her back, vertigo, irregular

heartbeat, diverticulitis, irritable bowel syndrome, acid reflux, abnormal

mammograms, edema, and obesity.[2]  (Dkt. 12-3 at 3, R. 77).  The Social Security

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions.  The Undersigned has elected to implement that practice in this Order.
[2] While Julie listed each of these conditions on her application, and her counsel elicited testimony regarding irritable bowel syndrome at the hearing, the ALJ did not mention diverticulitis, irritable

Administration ("SSA") denied Julie's claim initially on August 2, 2019, (Dkt. 12-3 at 2-12, R. 76-86), and on reconsideration on September 25, 2019. (Id. at 13-23, R. 87-97).  Julie filed a written request for a hearing, (Dkt. 12-4 at 16, R. 112), and on November 12, 2020, a hearing was held before Administrative Law Judge ("ALJ") Howard Wishnoff, where Julie, her counsel, and vocational expert Eric Dennison all appeared telephonically. (Dkt. 12-2 at 43-76, R. 42-75).  On January 12, 2021, ALJ Wishnoff issued an unfavorable decision finding that Julie was not disabled. (Dkt. 12-2 at 30-38, R. 29-37).  On May 11, 2021, the Appeals Council denied Julie's request for review, making the ALJ's decision final. (Dkt. 12-2 at 2-5, R. 1-4).  Julie now seeks judicial review of the ALJ's decision denying benefits.  *See* 42 U.S.C. § 1383(c)(3).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act.  To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she

---

bowel syndrome, or acid reflux in his decision.  Julie does not assert that the failure to address these impairments was error.

2

cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 416.920(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted).  An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled.  20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920.  A negative answer at any point, other than step three and five,

---

[3] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is

based on substantial evidence. Substantial evidence "means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Julie is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Julie was fifty-two years old on the date her application was filed.  (Dkt. 12-3 at 2, R. 76).  She has a high school education. (Dkt. 12-2 at 37, R. 36; Dkt. 12-6 at 7, R. 190).  She has no past relevant work.  (Id.).

#### B. ALJ Decision

In determining whether Julie qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Julie was not disabled.  (Dkt. 12-2 at 30-38, R. 29-37).  At Step One, the ALJ found that Julie had not engaged in substantial gainful activity since her application date of June 21, 2019.  (Id. at 32, R. 31).

At Step Two, the ALJ found that Julie had severe impairments of spine disorders, dysfunction major joints, and obesity.  (Id.).  The ALJ also found that Julie had non-severe medically determinable impairments of bradycardia and

6

anxiety.  (Dkt. 12-2 at 32-33, R. 31-32).  In making this finding, the ALJ considered the "paragraph B" criteria and concluded that Julie had mild limitations in interacting with others and no limitations in the remaining areas of understanding, remembering or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Id. at 33, R. 32).

At Step Three, the ALJ found that Julie's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically, Listings 1.02 (Major Dysfunction of a Joint) and 1.04 (Disorders of the Spine).  (Dkt. 12-2 at 34, R. 33).

After Step Three but before Step Four, the ALJ found that Julie had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), "except the claimant can sit or stand as needed while remaining at the work station with no loss of productivity.  She can occasionally perform all postural activities though she can never climb ladders, ropes, or scaffolds nor could she operate foot controls with either foot."  (Dkt. 12-2 at 35-37, R. 34-36).

At Step Four, the ALJ concluded that Julie had no past relevant work.  (Dkt. 12-2 at 37, R. 36).  At Step Five, relying on the testimony of the vocational expert, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Julie could perform. (Id. at 37-38, R. 36-37).  Thus, the ALJ concluded that Julie was not disabled. (Id. at 38, R. 37).

## IV.   ANALYSIS

Julie argues that this matter should be remanded because (1) the ALJ's decision is based on cherry-picked evidence (2) the ALJ failed to build a logical bridge from the evidence to his RFC conclusions; (3) the ALJ conducted a faulty 16-3p analysis of her subjective symptoms; and (4) the ALJ erroneously relies on outdated and unsupported state agency opinions at Step Three and in crafting the RFC. (Dkt. 14 at 1-2). The Court will address the arguments in turn.

### A.  Subjective Symptom Analysis

Julie argues that there are "two critical defects" in the ALJ's decision:  that the ALJ "cherry-picked evidence, highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in functioning," and that the ALJ "failed to provide an accurate and logical bridge from the evidence to his conclusions."  (Dkt. 14 at 7).  Julie then argues that "[t]hese errors are best reflected in the ALJ's assessment of Plaintiff's statements."  (Id.). The Court agrees that the ALJ failed to adequately explain and support his subjective symptom evaluation.

In arriving at his determination of non-disability, the ALJ evaluated Julie's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p.  (Dkt. 12-2 at 35, R. 34).  "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination."  *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective

symptoms.[4]  First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.  SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit her ability to perform work-related activities.  *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted).  To satisfy this standard, the ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano,* 556 F.3d at 562.  An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 1:18-cv-0328-JRS-MPB, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019). Without this discussion, the Court is unable to determine whether the ALJ reached his decision in a rational manner,

---

[4] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing her "credibility."  By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2016 WL 1119029 at *1.  The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

logically based on his specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at *9.

At step two of the Rule 16-3p analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain.  20 C.F.R. § 416.929(c)(3).

When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements.  To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8.  The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."  *Id*. at *9.

After summarizing Julie's hearing testimony about her symptoms and the medical evidence on record, the ALJ explained his subjective symptom evaluation as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Objective testing revealed mild multilevel degenerative disc disease, but with physical therapy, her pain reduced to a three out of ten. (Exhibit 1F, 4F, 5F, and 12F). Similarly, the claimant experienced pain due to plantar fasciitis. (Exhibits 11F and 13F). However, with surgery, the claimant's foot pain improved and she was "doing well." (Exhibit 13F). Moreover, the claimant could perform household chores, manage her personal care, care for her son,[5] and cook. (Exhibits 4E, 12F, and Hearing Testimony). These activities fall within the confines of the aforementioned residual functional capacity assessment.

(Dkt. 12-2 at 36, R. 35) (footnote added).

Julie argues that "the ALJ's conclusion that Plaintiff's ability to engage in activities of daily living, manage personal care independently, care for her son, and cook is not consistent with disabling limitations is unsupported because the ALJ did not address the *qualifications* with which Plaintiff performs activities." (Dkt. 14 at 8) (emphasis in original). Julie is correct that it is error for an ALJ to point to a claimant's daily activities as contradicting the claimant's subjective symptom allegations without considering the manner in which the activities are performed. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). In this case, the ALJ cites to Exhibits 4E and 12F and Julie's hearing testimony as supporting his statement regarding Julie's daily activities. Exhibit 12F consists of 115 pages of physical therapy records, (*see* Dkt. 12-9 at 2-116, R. 664-778); the ALJ does not indicate

---

[5] The Court notes that Julie's son is a teenager. (*See* Dkt. 12-6 at 25, R. 208) (noting son was thirteen years old when form was completed).

11

where in those records there is mention of Julie's daily activities.  The Court's own review of the records reveals the notations that Julie "can perform most of homemaking/job duties, but pain prevents performing more physically stressful activities (e.g., lifting, vacuuming)" and that she can "take care of self normally, but it increases pain." (Dkt. 12-9 at 87-88, R. 749-50).  Exhibit 4E is a function report completed by Julie, in which she notes that she has "no problem" with personal care; that she spends 15-30 minutes a "couple times a week" preparing meals, but that "between my back and vertigo I can't cook"; that she does a load of laundry, sweeps, and uses the dishwasher, working on these chores "throughout the day"; and that her "family helps if it becomes too much." (Dkt. 12-6 at 25-27, R. 208-210).  Julie's testimony at the hearing was consistent with these statements.  For example, she testified that she can "cook little meals and we heat a lot of stuff in the microwave" and that her other household chores are limited to "[l]aundry and maybe sweeping my floor." (Dkt. 12-2 at 54, 56, R. 53, 55).  She also explained at the hearing that her family installed a "handicap shower" with a seat in it in their home because she was "having trouble getting in and out of a bathtub." (Dkt.12-2 at 52-53, R. 51-52).

It was error for the ALJ to rely on the fact that "the claimant could perform household chores, manage her personal care, care for her son, and cook," (Dkt. 12-2 at 36, R. 35), without recognizing and accounting for her limitations in carrying out these tasks.  Further, the ALJ erred by failing to explain how Julie's quite limited activities of daily living, as she performs them, are inconsistent with her symptoms.

12

*Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with [the claimant's] description of her pain and limited mobility.  Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (same).  Nor does the ALJ explain how those activities, as Julie performs them, constitute evidence that Julie can perform the type of full-time work he found her capable of.  As the Seventh Circuit has explained,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).[6]  Thus, the Seventh Circuit has held that "[w]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible." *Ghiselli v. Colvin*, 837 F.3d 771,

---

[6] The Commissioner argues that "contrary to Plaintiff's argument the ALJ did not suggest that Plaintiff's activities alone supported a finding she could perform light work; rather, as discussed above, the ALJ found Plaintiff could perform work in line with the RFC based on his reasonable consideration of the record as a whole." (Dkt. 16 at 22-23).  However, the ALJ did find that Julie's activities "fall within the confines of the aforementioned residual functional capacity assessment." (Dkt. 12-2 at 36, R. 35).  While it is not clear to the Court what this statement means, it appears to mean that the ALJ believes that someone who can perform those activities is capable of performing work at the assessed RFC.

13

777-78 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir.

2014); *Bjornson,* 671 F.3d at 647).  It was error for the ALJ to do so here.

> The Commissioner argues that
>
> even if the ALJ's consideration of Plaintiff's daily activities was not as thorough as it could have been, "[n]ot all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009).  As the ALJ provided several other valid bases for discounting Plaintiff's subjective reports, there is no basis for remand here.

(Dkt. 16 at 23).  However, the "several other valid bases" given by the ALJ consist of

the following statements: (1) "Objective testing revealed mild multilevel

degenerative disc disease, but with physical therapy, her pain reduced to a three

out of ten"; and (2) "Similarly, the claimant experienced pain due to plantar

fasciitis.  However, with surgery, the claimant's foot pain improved and she was

'doing well.'"  (Dkt. 12-2 at 36, R. 35) (citations omitted).  But the comment that

Julie was "doing well" after her foot surgery was in the context of her *healing from*

*the surgery*, not whether the surgery was successful at alleviating her foot pain.

(*See* Dkt. 12-9 at 117, R. 779) ("2 weeks, 6 day [post-op] pt is doing well, sore around

incision sites, appears slightly red and swollen, no drainage.  No other

complaints.").[7]  At that same visit, it was noted that her pain level in her right foot

was a constant four out of ten.  (Id.).  It is not clear how that in any way contradicts

---

[7] The only other mention in Exhibit 13F of Plaintiff "doing well," is Julie's June 9, 2020 appointment with Dr. Matthew DeWitt, which occurred 4 days post-op her plantar fasciotomy release procedure. (Dkt. 12-9 at 121, R. 783). While that treatment note indicated that Julie was not having much pain, with her pain level at 0/10, the medical records suggest that any pain relief was short-lived.  (*See* Dkt. 12-9 at 117, R. 779 (June 25, 2020 treatment record noting pain as 4/10)).

Julie's allegations regarding her foot pain.  Similarly, it is not clear how the fact that Julie reported her back pain to be three out of ten at one physical therapy visit contradicts her allegations regarding her back pain.[8]  Moreover, the discharge summary from Julie's physical therapist noted that Julie continued to experience lower back pain. (Dkt. 12-9 at 72, R. 734).  This note is generally consistent with Julie's report to her primary care physician approximately two weeks later that she had "not noticed any improvement" in her back pain after completing her physical therapy.  (Dkt. 12-7 at 152, R. 406).  And, of course, the fact that only "mild" changes were noted on imaging cannot, by itself, support a finding that discounts a claimant's allegations of pain.  *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (quoting *Villano*, 556 F.3d at 562) ("An 'ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.'"); *see also Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (same); 20 C.F.R. § 416.929 ("However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the

---

[8] The Commissioner cites to *Elder v. Astrue*, 529 F.3d at 412, for the proposition that it was "entirely appropriate" for the ALJ to consider Julie's "contemporaneous reports to her physicians that her back pain improved to a three out of ten and her foot pain improved with surgery."  (Dkt. 16 at 20). *Elder* is clearly distinguishable from this case, however.  In *Elder*, the ALJ discounted Elder's credibility because she denied making specific statements that were contained in her medical records.  529 F.3d at 412  ("But when Elder was confronted with Dr. Ko's medical records from November 1998, she denied having told him that she was able to walk a mile-and-a-half a day; as Elder put it, '[t]here was no possible way' that she could have walked that far.  And although Elder admitted to having participated in some aquatic-aerobics classes, she stated that—contrary to what Dr. Ko recorded—she was unable to complete more than five to ten minutes of the classes because of her pain.").  There are no such directly contradictory statements in this case.

15

effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper,* 712 F.3d at 367.[9] Here, the ALJ failed to fulfill his obligation to explain and support his subjective symptom evaluation with actual evidence.  Remand is required to correct this error.

### B. RFC Analysis

Next, Julie argues that the ALJ's RFC determination is "not supported and lacks an accurate and logical bridge." (Dkt. 14 at 12).  Specifically, Julie argues that the ALJ erred by not conducting a function-by-function analysis of her work-related abilities, particularly her ability to stand and walk.  (Dkt. 14 at 13).  Julie correctly cites SSR 96-8p as requiring that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in [20

---

[9] The Court notes that, in her brief, the Commissioner points to potential conflicts between Julie's function report and her hearing testimony that the ALJ did not cite to or include in his decision.  *See* (Dkt. 16 at 22) (discussing assertions relating to driving and grocery shopping).  This type of post-hac rationalization for the ALJ's findings is impermissible.  *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.").

C.F.R. § 416.967(b)-(d)]. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light . . . ."  SSR 96-8p, 1996 WL 374184, at *1.

As the Commissioner points out, the Seventh Circuit has held that "a decision that lacks a function-by-function analysis does not require remand if the reviewing court is satisfied the ALJ implicitly considered each function." *Krug v. Saul*, 846 F. App'x 403, 407 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020)).  However, in this case, the ALJ's decision does not give the Court confidence that the ALJ properly considered Julie's ability to perform the lifting, standing, and walking required for light work, as well as all of the occasional postural activities included in the RFC.  *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").  The ALJ does not explain his findings, other than to point to the state agency consultants' opinions which, of course, were made without the benefit of Julie's testimony.  Given the fact the RFC determination depends largely, if not entirely, on the amount of pain that the required lifting, standing, and walking would cause Julie, as well as how her other subjective symptoms (such as vertigo) would affect her ability to work, on remand the ALJ will have to reconsider his RFC finding after reconsidering his subjective symptom evaluation.  In so doing, the ALJ shall take care to comply with his obligation to make a function-by-function analysis

17

pursuant to SSR 96-8p.  The ALJ also shall take care to consider Julie's allegations with regard to the effects of stress and anxiety on her symptoms and her need to elevate her legs during the workday.  To the extent that the ALJ's RFC changes as a result of these reconsiderations, the ALJ's Step 5 determination will also have to be reevaluated.

Finally, the Court agrees with the Commissioner that Julie has not demonstrated that the ALJ erred by failing to include any restriction related to the mild limitation in Julie's ability to interact with others.  Julie fails to identify any restriction that mild limitation places on her ability to work; accordingly, she has waived that argument.  *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).

### C.  State Agency Opinions

Julie also argues that "[n]one of the ALJ's errors can be salvaged by the State Agency opinions as they were outdated and unsupported," pointing to medical evidence that post-dates the agency opinions.  (Dkt. 14 at 11).  However, Julie wholly fails to explain how any of these post-dated records constitute the type of "significant and new developments" that reasonably could have changed the opinions.  *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have

18

changed the reviewing physician's opinion.").  The Court need not consider this type of undeveloped and perfunctory argument.  *Krell*, 931 F.3d at 586 n.1.

## V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 8/29/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.